IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SERENA ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:22-cv-758–HEH |
| ) | |
| FORD MOTOR COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
(Ordering a Jury Trial regarding the Arbitration Provision)

THIS MATTER is before the Court on Defendant REV Recreation Group, Inc.'s ("REV") Motion to Compel Arbitration (the "Motion to Compel," ECF No. 46) and Motion to Dismiss (ECF No. 48) (collectively, the "Motions"), filed on July 25, 2023. REV seeks to compel arbitration pursuant to its warranty, which mandates that Plaintiff Serena Anderson ("Plaintiff") resolve her claims before the American Arbitration Association (the "AAA"). (Mem. in Supp. of Mot. to Compel at 1, ECF No. 47.) REV also moves to dismiss Plaintiff's Amended Complaint (ECF No. 45) pursuant to Federal Rule of Civil Procedure 12(b)(3), the Federal Arbitration Act (the "FAA"), and the Virginia Uniform Arbitration Act (the "VUAA"). (Mem. in Supp. of Mot. to Dismiss at 1, ECF No. 49.)[1]

---

[1] Because REV's memoranda in support are almost substantively identical, citations herein refer to the Memorandum in Support of the Motion to Compel (ECF No. 47).

The parties[2] have submitted memoranda in support of their arguments.[3] On September 29, 2023, the Court heard oral argument, and took the Motions under advisement pending the parties' settlement conference on November 6, 2023.[4] For the reasons that follow, the Motions will remain under advisement pending the resolution of the jury trial on the arbitration provision.

## I. BACKGROUND

Plaintiff served in the United States Marine Corps for twenty-two (22) years. (Am. Compl. ¶ 4.) Upon her retirement, on May 26, 2021, Plaintiff ordered a custom 2021 Vacationer 36F (VIN: 1F66F5DN7M0A06544) from General R.V. Center, Inc. (*Id.*) She purchased the camper for $190,103.00. (*Id.*) Ford manufactured the motorhome's chassis, and REV manufactured the motorhome's "house." (*Id.*) Both Ford and REV supplied warranties on the product. (*Id.*)

Plaintiff then began experiencing a litany of issues with her motorhome, including:

> The motorhome needed repair on a compartment door; the struts supporting the bed; the driver's seat would not rotate; the recliner would not work; the wifi was inoperable; the LED lights in the awning were tangled in the awning and not visible; the *"black tank"* for holding sewage waste always read *"1/3"* so it was impossible to tell how full the tank actually was; the propane tank

---

[2] Defendant Ford Motor Company ("Ford") is not involved in the Motions at hand and, therefore, did not file memoranda in response to the Motions.

[3] Plaintiff's Memorandum in Opposition to the Motion to Compel is incorporated in her Memorandum in Opposition to the Motion to Dismiss. (*See* Mem. in Opp'n to Mot. to Dismiss, ECF No. 54.) Thus, citations herein refer to Plaintiff's Memorandum in Opposition to the Motion to Compel (ECF No. 53).

[4] The parties did not reach a settlement agreement at the conference. However, they indicated that negotiations were ongoing, and, accordingly, the Court refrained from issuing its Opinion pending the results of the settlement negotiations. During a conference call on February 14, 2024, the parties stated that they had not reached a settlement and that the Motion is ripe for the Court's review.

> door did not latch and opened while driving; the cargo door next to the propane door does not lock; the cargo door on the passenger side does not latch; the cabinets above the driver and passenger seat did not have a latch to stay closed while driving; the SAT ports were installed backwards; the fuse box across from the bunkhouse would not close; the door for the gas tank would not lock or unlock; the master bathroom door frame and trim was detached; the driver's head light was inoperable; and the prong to tow an auxiliary vehicle had no power to the lights."

(*Id.* ¶ 5.) On October 13, 2021, Plaintiff brought the camper to General RV Center, an authorized warranty repair agent for REV, in Ashland, Virginia, for repairs under REV's warranty for defects. (*Id.*)

On October 22, 2021, Plaintiff embarked on a cross-country trip from General RV Center to California to visit her mother. (*Id.* ¶ 6.) While on her trip, "the 'check engine' light came on and the air conditioner blew hot air instead of cold air." (*Id.* (italics omitted).) Plaintiff spent ten (10) days in Dallas, Texas seeking repairs, but no Ford Dealership in the state of Texas was available to service her motorhome until April 2022. (*Id.*)

Plaintiff then drove from Texas to California without air conditioning and with the "check engine" light still on. (*Id.* ¶ 7.) The camper "began losing power on the slightest incline and would not maintain speed over 20 mph on hills." (*Id.*) On December 2, 2021, Plaintiff drove the motorhome to a Ford-authorized warranty repair dealership, Jim Burke Ford, in Bakersfield, California. (*Id.*) On December 8, 2021, Plaintiff picked up the camper, and, after driving only thirty (30) miles, the "check engine" light returned and the air conditioning on the driver's side was still not functioning. (*Id.* ¶ 8.) Plaintiff immediately returned to Jim Burke Ford for another repair of the ongoing issues. (*Id.*)

3

On December 14, 2021, Plaintiff again picked up the motorhome after being told it was repaired. (*Id.* ¶ 9.) However, the air conditioner was not repaired because REV and Ford disagreed as to which manufacturer is responsible for its repair. (*Id.*) The check engine light came on again. (*Id.*) Plaintiff drove back across the country with these issues persisting and dropped the motorhome off at Gator Ford in Florida for a third repair attempt on the motor. (*Id.* ¶¶ 9–10.) The camper stayed at Gator Ford from March 16–17, 2022, to repair several misfiring cylinders and improper spark plugs. (*Id.* ¶ 11.) On March 17, 2022, Plaintiff picked up the camper, and Gator Ford maintained that REV was responsible for the air conditioning problem. (*Id.* ¶ 12.)

On April 26, 2022, Plaintiff delivered the motorhome to General RV in Virginia with a slew of issues. (*Id.*) Between January 2022 and April 2022, Plaintiff contacted General RV several times each week to check on parts ordered in October 2021, but General RV did not respond. (*Id.* ¶ 13.) Between April 26–30, 2022,[5] the motorhome was at General RV in Florida for repairs. (*Id.* ¶ 14.) Plaintiff left Florida on May 1, 2022, but more problems continued to surface, including:

> [t]he rear air conditioning unit stopped working, and then the refrigerator/freezer stopped working, spoiling all the food. . . . The navigation unit screen was not what [Plaintiff] ordered. A leak was discovered with significant water damage on the lower kitchen cabinets with everything in the cabinets soaked through. Water damage had seeped into the carpets and the wood. There was a strong smell of mold.

---

[5] Notably, the Amended Complaint provides conflicting dates as to when the motorhome was located in Virginia and Florida. (*Compare* Am. Compl. ¶ 12 *with id.* ¶ 14.)

4

(*Id.*) On June 14, 2022, Plaintiff sent REV a full list of sixteen (16) required repairs with photos. (*Id.*) REV informed Plaintiff that only two (2) repair facilities in the United States could resolve these issues—the REV facility in either Indiana or Oregon. (*Id.*) Plaintiff then brought the motorhome to REV's Oregon facility for repairs on July 11, 2022. (*Id.* ¶ 15.) While waiting for paperwork, the washer and dryer stopped working, the retractable awning broke, and the auto-leveler stopped working. (*Id.* ¶ 14.) Plaintiff's motorhome remains at REV's Oregon facility to this day. (*Id.* ¶ 15.)

Based on the issues with her camper, Plaintiff brought six (6) counts in her Amended Complaint: Count I – Violations of the Virginia Consumer Protection Act ("VCPA") by REV; Count II – Violations of the VCPA by Ford; Count III – Revocation of Acceptance under Virginia Code § 8.2-608; Count IV – Rescission; Count V – Motor Vehicle Warranty Enforcement Act, Virginia Code § 59.1-207.9, *et seq.*, "Lemon Law;" and Count VI – Violation of the Magnuson-Moss Act. (*See id.* ¶¶ 17–45.) REV now moves to compel arbitration and to dismiss the Amended Complaint.

## II. LEGAL STANDARD

The Fourth Circuit construes a motion to compel arbitration as a motion to dismiss for improper venue pursuant to Rule 12(b)(3). *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012) (citing *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). When considering Rule 12(b)(3) motions, the Court is permitted to consider evidence outside the pleadings. *Id.* at 365–66 (internal citations omitted). Thus, the Court will review REV's Motion to Compel as a

5

motion to dismiss under Rule 12(b)(3) and will consider the Motion to Compel and Motion to Dismiss together.

The FAA "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019). An arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . ." 9 U.S.C. § 2. Accordingly, the FAA "establishes a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (internal citations and quotations omitted). Additionally, the VUAA and Virginia public policy favor arbitration. *See TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 557 S.E.2d 199, 202 (Va. 2002).

The FAA allows a court to compel arbitration in certain circumstances. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). To compel arbitration under the FAA, the movant must show:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal . . . to arbitrate the dispute.

*Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (internal citations and quotations omitted). A party may not be compelled to arbitrate under the FAA "unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (emphasis in original). In deciding whether the parties formed an agreement to arbitrate, the court must "conduct a trial under the Trial Provision [of the FAA] when a party unequivocally

6

denies that an arbitration agreement exists, and shows sufficient facts in support thereof." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (internal citations and quotations omitted); *see* 9 U.S.C. § 4.

"To decide whether 'sufficient facts' support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test." *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234. If there is a genuine issue of material fact "regarding the existence of an agreement to arbitrate," the court must hold a jury trial on this issue. *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015); *see* 9 U.S.C. § 4. A factual dispute is material if its resolution "might affect the outcome of the [motion] under the governing law." *Berkely Cnty. Sch. Dist.*, 944 F.3d at 234 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (alteration in original). Virginia law controls the question of whether the parties reached an agreement to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (explaining that state law ordinarily governs arbitration issues).

Under Virginia law, a contract is "an agreement between two or more persons which creates an obligation to do or not to do a particular thing." *Boyle v. Anderson*, 301 Va. 52, 56 (2022) (internal citations, quotations, and alterations omitted). A valid contract requires offer, acceptance, and consideration. *See Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995). "It is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts." *Lacey v. Cardwell*, 216 Va. 212, 223 (1975) (internal citation and quotation omitted).

7

## III. ANALYSIS

REV asserts that Plaintiff must arbitrate her claims because she signed a warranty acknowledgment form upon purchasing the motorhome that requires the parties to bring any claims to the AAA. (Mem. in Supp. of Mot. to Compel at 1.) REV contends that both parties are bound by the warranty and that the provision encompasses Plaintiff's claims. (*Id.* at 1, 6.) REV further argues that the parties are bound by the warranty because by signing the warranty acknowledgement form, "Plaintiff acknowledged she was provided the warranty and read it, or chose not to read it, and that review of the warranty was performed pursuant to the checklist." (*Id.* at 3.)

The form specifically states: "**Warranty Disclaimer**: I understand that if the RV has written warranties covering it, they are from the manufacturers of the RV and/or its components. These warranties have been provided to me. I have read and understand them or have chosen not to read them." (Ex. 1 at 1, ECF No. 47-1.) Additionally, Plaintiff was provided a separate form which included a customer orientation checklist containing a box indicating "REVIEW OF OWNERCARE WARRANTY, CONTENTS OF OWNER'S INFORMATION PACKAGE AND NEED TO READ AND FOLLOW INSTRUCTIONAL MATERIALS." (*Id.* at 3.) The box is marked with an "X," and Plaintiff signed and affirmed that "[a]ll items on the above checklist have been performed by the undersigned dealer to my complete satisfaction." (*Id.*)

REV asserts that the language of the warranty covers Plaintiff's claims because it states:

8

> **LEGAL REMEDIES AND DISPUTE RESOLUTION**
> Any claim or controversy arising out of or relating to this limited warranty, or beach [sic] thereof, shall be settled by arbitration administered by the American Arbitration Association in Milwaukee, Wisconsin in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

(Mem. in Supp. of Mot. to Compel at 3 (quoting Ex. 2 at 2, ECF No. 47-2).) REV contends that, because the arbitration provision applies, the Court should dismiss this case. (*Id.* at 8.) Alternatively, if the Court does not dismiss Plaintiff's claims, REV requests that the Court compel arbitration and stay the proceedings pending the outcome of arbitration. (*Id.*)

Plaintiff opposes the Motions. Although Plaintiff admits that she signed the acknowledgement form, she contends that she was unaware of the arbitration provision and that REV concealed the terms of the warranty. (Mem. in Opp'n to Mot. to Compel ¶¶ 3–4; *see* Ex. A ¶¶ 4, 6.) Therefore, there was no mutual assent of the parties, and the contract is unenforceable. (*Id.*) In support of this argument, Plaintiff submits a declaration under penalty of perjury stating "[she] was not provided these warranties at the time [she] signed [the warranty acknowledgement] even though the document says [she] was. [She] was told about these warranties in general terms only." (Ex. A ¶ 4, ECF No. 53-1.) Plaintiff also states that "if [she] had been told directly that [she] was giving up [her] right to a jury trial in the event of any claim or controversy[,] [she] would not have agreed to this." (*Id.* ¶ 5.) She notes that the warranty acknowledgement does not mention arbitration and she "denies receiving the REV warranty before she signed [the acknowledgement form]." (Mem. in Opp'n to Mot. to Compel ¶ 6 (citing Ex. A ¶¶ 4, 6).)

9

Additionally, Plaintiff argues that the acknowledgment form is "not a REV form or document at all," but rather "is a form of General RV." (*Id.* ¶ 5.) Thus, it cannot bind Plaintiff and REV. (*Id.*) Plaintiff also contends that the form is insufficient because it merely states that the manufacturers have written warranties, without explicitly identifying the clauses. (*Id.* ¶ 8.) At oral argument, Plaintiff requested a jury trial on whether the parties entered into an arbitration agreement pursuant to § 4 of the FAA.

The Court first turns to whether the parties are bound by the asserted arbitration clause. On one hand, as REV argues, Plaintiff signed the warranty acknowledgement indicating that she understood the motorhome manufacturers may have written warranties, and that the warranties were provided to her. (*See* Ex. 1 at 1.) The signed warranty acknowledgement also stated that she has read and understood the warranties or has chosen not to read them. (*See id.*) Additionally, Plaintiff signed a separate checklist form indicating that the dealer satisfactorily performed the items on the orientation checklist which included a review of the warranty and contents of the owner's information package. (*See id.* at 3.)

On the other hand, Plaintiff provides a sworn declaration stating that she was not provided copies of REV's warranty containing the arbitration provision when she signed the acknowledgement form. (*See* Ex. A. ¶ 4.) Her sworn declaration also asserts that she was aware there was a warranty, but was not aware of its contents, including the arbitration provision. (*See id.*) She further swears that, if she had known of the arbitration agreement, she would not have agreed to it. (*See id.* ¶¶ 5, 7.)

10

Based on these dueling contentions, a reasonable factfinder could find that Plaintiff did not enter into the arbitration agreement because she was not provided a copy of REV's warranty and, therefore, was unaware of its existence. The Court finds that a material dispute of genuine fact exists as to whether Plaintiff was provided REV's warranty at the time she signed the warranty acknowledgement form upon purchasing the motorhome. *See Berkeley Cnty. Sch. Dist.*, 944 F.3d at 239 (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 162 (3d Cir. 2009) ("ruling that party's sworn assertion that she never received purported agreement containing the arbitration clause created material dispute of fact")). This dispute is material to these proceedings because it concerns Plaintiff's assent to the arbitration agreement. *See Valjar, Inc. v. Mar. Terminals, Inc.*, 220 Va. 1015, 1018 (1980) ("A contract cannot exist if the parties never mutually assented to terms proposed by either. . . .") (internal citation omitted). Thus, this Court is required to hold a jury trial on this limited issue pursuant to 9 U.S.C. § 4. *See Berkeley Cnty. Sch. Dist.*, 944 F.3d at 242 ("The Trial Provision [of the FAA] requires a court to 'proceed summarily' to trial when there is a material factual dispute related to the making of an arbitration agreement.") (quoting 9 U.S.C. § 4).

## IV. CONCLUSION

The Court is of the opinion that Plaintiff is entitled to a jury trial on whether Plaintiff was provided REV's warranty at the time she signed the warranty acknowledgement form upon purchasing her motorhome. Accordingly, the Court will set this matter for a jury trial on this limited issue.

The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

11

It is so ORDERED.

                                                                          /s/

                                                Henry E. Hudson  
                                                Senior United States District Judge

Date: February 27, 2024  
Richmond, Virginia